**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Lisa P. ROUSE, Appellant.**

Superior Court of Pennsylvania.

Argued June 12, 2001.

Filed Aug. 27, 2001.

---

Michael A. Ventrella, Stroudsburg, for appellant.

Donald Leeth, Asst. Dist. Atty., Stroudsburg, for Com., appellee.

Before: JOYCE, LALLY–GREEN and KELLY, JJ.

JOYCE, J.:

¶ 1 In this appeal, Lisa Rouse (Appellant) appeals from the judgment of sentence imposed by the trial court following her conviction of issuing a bad check in violation of 18 Pa.C.S.A. § 4105.[1] For the reasons set forth below, we vacate the judgment of sentence and remand for further proceedings. Before addressing the merits of Appellant's claims, we will re-

---

**1.** 18 Pa.C.S.A. § 4105(a) provides as follows in pertinent part:

(a) Offense defined.—

(1) A person commits an offense if he issues or passes a check or similar sight order for the payment of money, knowing that it will not be honored by the drawee.

(2) A person commits an offense if he, knowing that it will not be honored by the drawee, issues or passes a check or similar sight order for the payment of money when the drawee is located within this Commonwealth. A violation of this paragraph shall occur without regard to whether the location of the issuance or passing of the check or similar sight order is within or outside of this Commonwealth. It shall be no defense to a violation of this section that some or all of the acts constituting the offense occurred outside of this Commonwealth.

count the pertinent facts giving rise to this appeal.

¶ 2 This matter arose from a dispute regarding an automobile repair contract between Appellant and the victim, Michael Seeback. Appellant allegedly issued a bad check to the victim and was subsequently charged with a violation of 18 Pa.C.S.A. § 4105(a)(1). On the eve of the trial, the Commonwealth filed a motion *in limine* requesting the exclusion of any evidence relating to the automobile repair contractual dispute as well as the civil action that arose therefrom. The trial court granted the motion and prohibited Appellant from introducing such evidence.

¶ 3 At the trial held on November 3, 2000, the victim testified that on July 24, 1999, Appellant issued him a personal check in the amount of $240.00 and that the check was returned to him unpaid because of insufficient funds. The following words were stamped across the face of the check: "return unpaid[;] insufficient funds." Without objection, the check was admitted into evidence as Exhibit 1. *See* N.T., at 6.

¶ 4 Later on during the trial, the Commonwealth sought to have the victim read the contents of the check to the jury. Specifically, the Commonwealth wanted the victim to read the words "return unpaid[;] insufficient funds." Appellant objected to the reading of these words on the basis of hearsay but the objection was overruled.

¶ 5 The victim also testified that when the check was returned to him unpaid, he attempted to contact Appellant to inform her that her bank did not honor her check. He did so by sending a certified letter to Appellant on November 26, 1999, using the address on the face of the check. However, this letter was returned as unclaimed.

The victim sent a second certified letter to a different address—the one Appellant indicated as her address on the vehicle repair order sheet. The receipt from this second certified letter indicated that the letter was received. N.T., at 11. However, the victim conceded that although the letter was received, he did not recognize the signature of the recipient as that of Appellant. *Id.* According to the victim, Appellant did not pay the amount of the check within ten days after the second certified letter was sent.

¶ 6 During her testimony, Appellant conceded that she issued the check in question to the victim. After being informed by her bank that she did not have enough money in her account to cover the amount of the check, Appellant called the victim and told him not to deposit the check. She also stated that she never received any letter from the victim concerning her bank's refusal to honor the check. N.T., at 24–25.

¶ 7 At the close of all evidence, the trial court instructed the jury regarding the applicable law, namely, 18 Pa.C.S.A. § 4105 as well as the presumptions contained therein. Although we question the correctness of the court's instruction on the issue of presumptions and the ability of a defendant to rebut them, we note that Appellant did not object to the instruction. After deliberation, the jury found Appellant guilty of the crime charged. Sentencing was scheduled for December 19, 2000.

¶ 8 Although the certified record contains neither the official order of sentence nor the transcript of the sentencing proceeding, the parties agree that Appellant was sentenced to six months' probation and was ordered to pay restitution to the victim. Appellant's motion for reconsideration of sentence was denied on January 20, 2001.[2] On February 2, 2001, Appellant

---

**2.** The judgment of sentence became final    when the trial court disposed of the post-

filed the instant appeal, raising the following issues:

A. Is the evidence of the underlying civil action and consumer complaint between the defendant [Appellant] and the victim irrelevant and inadmissible to provide a legitimate defense against the presumptions of 18 Pa.C.S.A. § 4105(a)(1)(ii)?

B. Is a jury instruction valid which states that because of the presumption of 18 Pa.C.S.A. § 4105(a)(1)(ii), the jury does not have to consider an affirmative defense?

C. Is the admission of a bank check without authentication valid for proving the charge of Bad Checks?

D. Is evidence of the victim's motives or past history in bringing bad checks cases irrelevant to impeach the credibility of a witness?

E. Are the presumptions of 18 Pa. C.S.A. § 4105 ("Bad Checks") constitutional under the Pennsylvania Constitution?

Brief for Appellant, at 4.

■ ¶ 9 Appellant's allegations of error revolve around the trial court's ruling on the admissibility of evidence. "As our standard of review, we recognize that an appellate court may reverse a trial court's ruling regarding the admissibility of evidence only upon a showing that the trial court abused its discretion." *Commonwealth v. Minerd*, 562 Pa. 46, 753 A.2d 225, 229 (2000), *citing Commonwealth v. Hawk*, 551 Pa. 71, 709 A.2d 373, 376 (1998). We will be guided by this standard in our review of the trial court's evidentiary rulings.

■ ¶ 10 In the argument section of her brief, Appellant contends that the trial court erred when it ruled that evidence of the underlying civil action and consumer complaint between Appellant and the victim was irrelevant to the victim's possible bias. We agree. Although Appellant's brief did not exactly illuminate this argument with great clarity, we agree that evidence of the underlying civil action and the surrounding circumstances are relevant to show that the victim could have been biased and/or has an interest in the case. The fact that Appellant instituted a civil action against the victim and had obtained a money judgment as a result is clearly relevant to show that the victim could have made the complaint or could have shaped his testimony to exact some revenge. Most people, even in the most amicable circumstances, are not too thrilled with someone who initiated a civil action and obtained a money judgment against them. It is hardly a stretch to observe that being sued in court and being ordered to pay money judgment could cause someone to be biased against the person who initiated the legal action. Because the victim testified at trial, pursuant to Pa.R.E. 607(b), Appellant should have been permitted to impeach him with evidence of bias.

¶ 11 Under Pa.R.E. 607(b), "the credibility of a witness may be impeached by any evidence relevant to that issue, except as otherwise provided by statute or these Rules." The official comment to this rule indicates that subject to the rule regarding relevance and the rule regarding probative value versus prejudicial effect, under both the Federal Rules of Evidence and the

---

sentence motion. Thus, this appeal is timely. *See Commonwealth v. Chamberlain,* 442 Pa.Super. 12, 658 A.2d 395, 397 (1995), *appeal quashed,* 543 Pa. 6, 669 A.2d 877 (1995) and Pa.R.Crim.P. 1410 and comment thereto

(providing that judgment of sentence becomes final for purposes of appeal when the trial court disposes of defendant's post-sentencing motion).

Pennsylvania Rules of Evidence, a witness can be impeached for bias.

The methods that may be used to impeach credibility are subject to Pa. R.E. 401, which defines relevant evidence. For example, the United States Supreme Court held that the Federal Rules clearly contemplated that evidence of bias could be used to impeach credibility even though nothing in those Rules specifically covered the subject. *United States v. Abel,* 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). The Court pointed to F.R.E. 401, defining relevancy, and F.R.E. 402, providing for the admissibility of all relevant evidence, in support of its holding. *Id.* The Court commented that "a successful showing of bias ... would have a tendency to make the facts to which [the witness] testified less probable in the eyes of the jury than it would be without such testimony." *Id.* at 51[, 105 S.Ct. 465].

Pa.R.E. 401 and 402 are similar to their Federal counterparts, and they, too, support the impeaching of credibility by any means having any tendency to cast doubt on the witness' testimony.... Impeachment evidence is also subject to Pa.R.E. 403, which provides that relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice.

Pa.R.E. 607(b), official comment.

¶ 12 The United States Supreme Court has defined bias as "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." *United States v. Abel,* 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984).

¶ 13 Pennsylvania courts have consistently recognized that evidence of bias is relevant to impeach the credibility of a witness. In *Commonwealth v. Abu–Jamal,* 521 Pa. 188, 555 A.2d 846 (1989), the Pennsylvania Supreme Court adopted the reasoning of the United States Supreme Court in *Abel, supra,* that "proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony. The common law of evidence allowed the showing of bias by extrinsic evidence, while requiring the cross-examiner to take the answer of the witness with respect to less favored forms of impeachment." *Id.* at 853.

¶ 14 Other Pennsylvania decisions upholding the relevance of evidence of bias for impeachment purposes include: *Commonwealth v. Nolen,* 535 Pa. 77, 634 A.2d 192 (1993)(evidence of bias, interest, or corruption is always relevant impeachment evidence); *Commonwealth v. Mullins,* 445 Pa.Super. 583, 665 A.2d 1275 (1995)(same); *Commonwealth v. Bridges,* 563 Pa. 1, 757 A.2d 859, 875 (2000)(in Pennsylvania, a witness may be cross-examined as to any matter tending to show the interest or bias of that witness so that a jury can properly evaluate the witness' credibility).

¶ 15 In the instant case, we agree with Appellant that the facts of the underlying civil action are relevant and should have been considered by the jury in determining whether the victim, Mr. Seeback, was biased because of the civil judgment obtained by Appellant against him. The trial court erred in ruling that such evidence was irrelevant.

■ ¶ 16 Having determined that evidence of the civil action between Appellant and the victim (witness) is relevant for impeachment on the basis of bias, we must now determine whether pursuant to Pa. R.E. 403, the probative value of such evi-

dence is outweighed by the danger of unfair prejudice or confusion of the jury. Under Pa.R.E. 403, "[a]lthough relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

¶ 17 Evidence of the underlying contractual dispute between the victim and Appellant as well as the civil action resulting therefrom may tend to confuse the jury and may result in prejudice to the Commonwealth. However, the dangers of such prejudice and potential confusion of the jury do not outweigh the probative value of this evidence. Any possible confusion of the jury resulting from the introduction of this evidence can be minimized or cured through a cautionary instruction indicating the purpose for which the evidence is being introduced. We therefore hold that evidence of the civil action and the surrounding circumstances are relevant to show bias on the part of the victim. The trial court abused its discretion when it prevented Appellant from introducing the evidence. As such, we will vacate the judgment of sentence.

¶ 18 Based on our resolution of the issue of bias, it is unnecessary to review the other issues raised by Appellant. Nevertheless, we make the following observations:

¶ 19 The allegation of error with regard to the jury instruction on the issue of presumptions as stated in 18 Pa.C.S.A. § 4105(b)(ii) [3] (Appellant's second issue) was not raised in the 1925(b) statement. This issue is therefore waived. *See Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998). Also, in reviewing Appellant's fifth issue, we note that she did not challenge the constitutionality of 18 Pa.C.S.A. § 4105 at trial. This challenge is therefore waived.

¶ 20 With regard to Appellant's fourth issue, Appellant provided no authority for the contention that evidence of the victim's past history of bringing bad checks cases is relevant to impeach the witness' credibility. Appellant also does not indicate how such history was relevant to the resolution of the charges brought against her in the instant case.

■ ¶ 21 On the issue of the admission of the contents of the bank check into evidence without authentication (Appellant's third issue), we observe that when the check was first introduced into evidence as Exhibit 1, Appellant failed to object. Once this check was admitted into evidence, it is proper for a jury to examine the check, and it is proper for a witness to

---

**3.** 18 Pa.C.S.A. § 4105(b) provides as follows in pertinent part:

(B) PRESUMPTIONS.—For the purposes of this section as well as in any prosecution for theft committed by means of a bad check, the following shall apply:

(1) An issuer is presumed to know that the check or order (other than a post-dated check or order) would not be paid, if:

(i) payment was refused because the issuer had no such account with the drawee at the time the check or order was issued; or

(ii) payment was refused by the drawee for lack of funds, upon presentation with-

in 30 days after issue, and the issuer failed to make good within ten days after receiving notice of that refusal.

Notice of refusal may be given to the issuer orally or in writing by any person. Proof that notice was sent by registered or certified mail, regardless of whether a receipt was requested or returned, to the address printed on the check or, if none, then to the issuer's last known address, shall raise a presumption that the notice was received.

(2) A check or order stamped "NSF" or "insufficient funds" shall raise a presumption that payment was refused by the drawee for lack of funds.

read the contents of a document that has already been admitted into evidence. Although we question the manner in which the Commonwealth introduced the check into evidence, Appellant's objection regarding the contents of the check should have been raised when the Commonwealth first sought to introduce the check into evidence. The better practice would have been to introduce the check through a proper bank official who would then testify that it was indeed the bank that stamped the words "return unpaid[;] insufficient funds" on the check.

¶ 22 In sum, we conclude that the trial court erred in excluding evidence of the civil action and the surrounding circumstances. Such evidence may also be used to rebut the presumptions set forth in 18 Pa.C.S.A. § 4105. Therefore, we will vacate the judgment of sentence entered by the trial court and remand for a new trial.

¶ 23 Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.